GRAY and another, Appellants, vs. LA FAYETTE COUNTY and others, Respondents.

65   567
f104   20

*March 2 — March 16, 1886.*

*Taxation: Exemption: Parsonage: " Rented."*

Subd. 3, sec. 1038, R. S., exempts from taxation "parsonages, whether of local churches or districts, and whether occupied by the pastor permanently or *rented* for his benefit," and provides that " the *leasing* of such parsonages shall not render them liable to taxation." *Held*, that the word "rented" applies to parsonages rented by church associations as lessees, and the word "leasing" to parsonages owned by churches and leased to other parties.

APPEAL from the Circuit Court for *La Fayette* County. This is an appeal by the plaintiffs from an order sustaining a general demurrer to the complaint herein. The action was brought against the defendant county and its treasurer and clerk, to remove a cloud upon the title of plaintiffs to certain lots in the city of Darlington. The cloud consists of a tax-sale certificate issued to the county, which, although valid on its face, is alleged to be void. The cancellation of such certificate is demanded. In addition to the above facts, the case made by the complaint is briefly as follows: Plaintiffs own three contiguous lots constituting the yard, lawn, and garden appurtenant to a dwelling-house standing on said lots, which house is a suitable residence for one family and no more. April 1, 1883, they leased the house and lots to the Baptist Church of Darlington for one year, to be used as a parsonage, and it was so used by the pastor of that church and his family from April 10, 1883, until October 1 of the same year. During that time the church was a duly incorporated religious association. It employed a pastor, and owned a church edifice in which religious services were regularly held, but it never owned a parsonage. The rental of the property was worth $12 per

month, but the parties believed the same would be exempt from taxation while used as a parsonage; so they estimated the saving of taxes at $24, and thereupon agreed upon a rental of $10 per month.

The property was assessed for taxation in 1883, and was sold for nonpayment of the taxes levied upon it in that year, the county of *La Fayette* being the purchaser.

For the appellants there was a brief by *C. F. Osborn*, and oral argument by *P. A. Orton*.

*R. J. Wilson*, District Attorney, and *D. S. Rose*, for the respondents, contended, *inter alia*, that ownership of the parsonage by the church is necessarily implied by the word parsonage as used in this statute. Webst. Dict.; *Mason v. Muncaster*, 9 Wheat. 445. Where the legal title is in an individual, though the property is used for a church, it is not exempt from taxation. *Laurent v. Muscatine*, 59 Iowa, 509; *People ex rel. Rorke v. Brooklyn Assessors*, 32 Hun, 457; *Humphries v. Little Sisters*, 29 Ohio St. 201; *St. Peter's Church v. Scott Co.* 12 Minn. 395. The statute must be strictly construed. Blackwell on Tax Titles, 481; *Nashville, C. & St. L. R. Co. v. Hodges*, 7 Lea (Tenn.), 663; *Hoge v. R. & D. R. Co.* 99 U. S. 355; *Weston v. Sup'rs Shawano Co.* 44 Wis. 242; Cooley on Taxation, 54, 66.

LYON, J. The question to be determined is, Does the statute exempt from taxation property rented of the owner by a religious association for a parsonage, and occupied as such by its pastor, the association owning no parsonage? The answer to this question depends upon the meaning of certain terms employed in subd. 3, sec. 1038, R. S. The statute reads as follows: "The property in this section described is exempt from taxation, to wit: . . . (3) Personal property owned by any religious, scientific, literary, or benevolent association, used exclusively for the purposes of such association; and the real property, if not leased, or not

otherwise used for pecuniary profit, necessary for the location and convenience of the buildings of such association, and embracing the same, not exceeding ten acres; and the lands reserved for grounds of a chartered college or university, not exceeding forty acres; and the parsonages whether of local churches or districts, and whether occupied by the pastor permanently, or rented for his benefit. The occasional leasing of such buildings for schools, public lectures, or concerts, or the leasing of such parsonages, shall not render them liable to taxation."

The exemption of the statute includes the parsonage of a church "whether occupied by its pastor permanently, or rented for his benefit." The answer to the question above stated depends upon the meaning of the words "rented for his benefit." The contention of the plaintiffs is that they refer to a renting, by the church as lessee, of a parsonage for the benefit or use of its pastor; while that of the defendants is that they refer to a renting by the church, to a lessee, of its own parsonage, for the same beneficial purpose. The arguments of counsel in support of these respective propositions were learned, ingenious, and exhaustive. They left upon our minds the impression that the true meaning of the statute is, at least, somewhat doubtful, and that plausible reasons might be given for either construction contended for. We shall not attempt to follow the course of the arguments, or examine in detail the positions maintained by counsel, but will only state some of the leading considerations upon which our judgment must rest.

It may first be observed that the word "rented," according to its common and authorized use, refers as well to the act of a lessee as to that of a lessor. The lessor rents land to the lessee; the lessee rents land of the lessor. So the word "rented" in the statute may mean the renting of a parsonage by a church association, as lessee, as well as a

renting to a lessee, by the association, of a parsonage owned by it. Neither construction would be forced or unnatural.

Looking for light to other provisions of the statute, we find it enacted that "the leasing of such parsonages shall not render them liable to taxation." Here we have the word "leasing," which in its approved and legal signification refers more especially to an act of the lessor. A lease is a conveyance by the owner of an estate to another of a portion of his interest therein, for a term less than his own, in consideration of a certain annual or stated rent or other recompense. It is hardly accurate to say that the act of leasing may be done by the lessee. So we find that "rented" is, or at least may be, a word of broader signification than "leasing." If the terms "rented" and "leasing," as used in the statute, mean the same thing, one of the clauses which exempts from taxation the parsonage of a church association is entirely superfluous. The rules of statutory construction require us to struggle against a construction which leads to such a result.

Stress was laid in the argument upon the use of the word "such" in the last clause of the section,— "the leasing of *such* parsonages," etc. It was claimed that the word limited that clause to the same parsonages mentioned in the first clause. The objection to that construction is, as has just been stated, that it renders one or the other of these clauses superfluous, and gives to it no force or significance whatever. We may find an office and use for the word by interpreting it to signify parsonages "of local churches or districts," by which we suppose is meant local or district churches. In that view, the last clause would read: " The leasing of the parsonages of local churches or districts shall not render them liable to taxation."

We have no case here for the application of any rule of strict or liberal construction. We are only to determine the

JANUARY TERM, 1886.          571

Gray and another vs. La Fayette County and others.

true meaning and signification of the language which the legislature has incorporated in the statute, and to give effect to it. After a careful consideration of the subject, we are impelled to the conclusion that the more reasonable construction of the statute is that the word "rented," in subd. 3, applies to parsonages rented by church associations as lessees, and the word "leasing," in the last clause, to parsonages owned by churches and leased by the owners to other parties. It follows that the property described in the complaint, when the same was assessed for taxation in 1883, was the parsonage of the Baptist Church Association, rented by it for the benefit of its pastor (who occupied it), and was therefore exempt from taxation in that year.

An argument was submitted to the effect that the restriction in the first clause that the renting must be for the benefit of the pastor to exempt the parsonage from taxation, applies to and limits the last clause of the statute. The argument was founded upon the language of ch. 164, Laws of 1869, which, it is claimed, is incorporated in R. S. sec. 1038, subd. 3, with none but mere verbal changes. The language in ch. 164 is, "the leasing of the parsonage *as aforesaid*," etc. The claim of such limitation rests upon the use of the words "as aforesaid," which are omitted from the Revision. It is maintained that this phrase refers to the renting of the parsonage for the benefit of the pastor. We do not find it necessary to decide the point here, for, if the limitation exists, it does not affect the decision of this case. The query may be suggested, however, whether the phrase does not refer to the antecedent exception from the exemptions of the act of any and all real property of the association therein named (including, of course, church parsonages) which is "*leased*, or otherwise used for pecuniary profit." The purpose of the last clause may be to take leased parsonages out of the excep-

tion, and leave them exempt from taxation, notwithstanding they are leased for pecuniary gain.

We are sensible that there are very plausible reasons which make against the conclusions we have reached. These were urged upon our attention with much force by the learned counsel for the defendants; but we think the stronger and better reasons sustain our conclusions. We do not regard the case as very important in its results. The amount of property affected by it is probably not large, and if the legislature should think our construction of the statute incorrect, or that the exemption established by our judgment is against public policy, it can easily apply the remedy.

*By the Court.*— The order of the circuit court sustaining the demurrer to the complaint is reversed, and the cause will be remanded with directions to that court to overrule the demurrer.